IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| REBECCA WOOD, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | Civil Action No. 1:19-cv-00143 |
| ) | Hon. Liam O'Grady |
| ANDREW W. SAUL, ) | |
| *Commissioner of Social Security* ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Rebecca Wood's objections to Magistrate Judge Nachmanoff's Report and Recommendation ("R&R"), which recommends that the Court deny Wood's motion for summary judgment and uphold the ruling of the Administrative Law Judge ("ALJ"), which rejected Wood's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Rebecca Wood's appeal centers on her application for disability benefits following the onset of several mental and physical ailments in September 2014. Administrative Record ("A.R.") 21. For purposes of the present motion, Wood alleges that she continues to be afflicted by several ongoing mental impairments, including anxiety, stress, and mood disorder. *Id.*

The Administrative Record contains extensive medical evidence from emergency room visits, psychiatrist sessions, psychologist sessions, state agency consultant opinions, and Wood's adjudicatory hearing before the ALJ. *See* Dkt. 26, at 2–7. This evidence indicates that Wood

does, in fact, suffer from mild to moderate anxiety. *See* Dkt. 26, at 2 (citing A.R. 21). For example, she suffers from "difficulty understanding, focusing, and concentrating, frustration, insomnia, dislike of crowds, migraines, dizziness, sleepiness, lethargy, and anger." *Id.* However, the Administrative Record also reveals that Wood engages in many activities that are not consistent with her asserted disability. A.R. 26–27. These activities include going out to lunch with friends, grocery shopping, raising pets, and starting her own business. *Id.*

In response to the onset of her symptoms, Wood applied for disability insurance benefits on November 4, 2014. Dkt. 26, at 1. Her application was denied both initially and again upon reconsideration. *Id.* At her request, a hearing was held on August 21, 2017, before ALJ Suzette Knight. *Id.* Both Wood and a Vocational Expert ("VE") testified. *Id.* On December 14, 2017, the ALJ issued a decision finding that Wood was not disabled. *Id.* at 2. On December 10, 2018, the Appeals Council for the Office of Disability and Adjudication denied Wood's request for further administrative review and notified her that the ALJ's decision stood as the Commissioner's final decision. *Id.*

With all her administrative remedies exhausted, Wood filed a Complaint on February 6, 2019, challenging the ALJ's decision. Dkt. 1. Subsequently, Wood filed a motion for summary judgment on August 6, 2019, Dkt. 12, to which the Commissioner filed a cross-motion for summary judgment on August 30, 2019. Dkt. 18. On September 8, 2019, plaintiff filed a reply brief in support of her motion for summary judgment. Dkt. 23. Magistrate Judge Nachmanoff issued his R&R on June 8, 2020. Dkt. 26. Wood filed objections to the R&R on June 23, 2020, Dkt. 27, to which the Commissioner responded on July 6, 2020, Dkt. 28.

2

## II. STANDARDS OF REVIEW

### A. The Magistrate Judge's Report and Recommendation

In reviewing the Magistrate Judge's R&R, this Court maintains the final responsibility for adjudicating the claims at issue. *See Mathews v. Weber*, 423 U.S. 261, 269 (1976). Specifically, this Court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636; *Winford v. Chater*, 917 F. Supp. 398, 399 (E.D. Va. 1996). As to the portions of the R&R to which no specific written objections are made, the Court "need not conduct a *de novo* review, but must instead only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### B. The Administrative Law Judge's Ruling

An ALJ's decision is reviewed under the "substantial evidence" standard of review. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Fourth Circuit explains how this standard of review operates for purposes of judicial scrutiny of SSA determinations in *Shinaberry v. Saul*:

> The agency's factual findings on [the] score are "conclusive" in judicial review of the benefits decision so long as they are supported by "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151–52 (2019) (quoting 42 U.S.C. § 405(g)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154. "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). "[Thus,] the Social Security Administration's disability determination [must be affirmed] when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Id.* (internal quotation marks omitted).

3

952 F.3d 113, 120 (4th Cir. 2020).

## III. DISCUSSION

Plaintiff makes three discernible categories of objections to the Magistrate Judge's R&R. Addressing each in turn, the Court finds them to be without merit.

### Objection 1. The R&R fails to overturn the ALJ's Residual Functional Capacity ("RFC") analysis, which does not address key facts and legal arguments

When assessing whether an individual is disabled under the Social Security Act, an ALJ conducts a sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). First, "the ALJ asks . . . whether the [Plaintiff] has been working." If the answer is "no," the ALJ then inquires "whether the claimant's medical impairments meet the [SSA] regulations' severity and duration requirements; [and, if so], whether the medical impairments meet or equal an impairment listed in the [SSA] regulations." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). There is no dispute that Wood has failed to make these showings. Thus, pursuant to the Social Security Act's regulatory scheme, the ALJ proceeded to determine Wood's Residual Functional Capacity ("RFC"): "the most [she could] still do despite [her] physical and mental limitations that affect her ability to work." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

To determine a claimant's RFC, an ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (internal quotations omitted); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC 'in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (citing SSR 96-8p, 1996 WL 374184, at *1); *see also* 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very

4

heavy" exertional requirements of work). As part of this process, the ALJ evaluates all of the medical and non-medical evidence, 20 C.F.R. § 416.945(a)(3), taking stock of the claimant's symptoms and the extent to which they can reasonably be accepted as consistent with objective evidence. *Lewis*, 858 F.3d at 862. When medical signs indicate that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must then evaluate the intensity and persistence of those symptoms to determine how they limit the claimant's capacity for work. *Id.*

Once the ALJ formulates the RFC, it next assesses whether a claimant can prove that she is unable to perform past relevant work based on the RFC. 20 C.F.R. § 404.1565; *Shinaberry*, 952 F.3d at 119. If she cannot perform "past relevant work," the ALJ looks to see if the claimant, given her functional limitations, age, education, and work experience, can perform any other work that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1520(g). Here, the ALJ typically considers "the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Shinaberry*, 952 F.3d at 119.

In her objection, Wood disagrees with the Magistrate Judge's decision to uphold the substance of the ALJ's RFC. Wood makes this objection because the RFC indicates that Wood can perform several jobs that exist in significant numbers in the national economy, including hand packaging, laundry laboring, and industrial cleaning. *See* A.R. 28. Wood takes specific issue with the RFC's failure to more conspicuously address the impact of her mental disorder on (1) her ability to "sustain concentration, persistence [and] pace" over time, (2) her ability to maintain attendance and punctuality, and (3) her ability to interact with supervisors." Dkt. 27, at

5

1–4. She recasts these objections to the RFC as a failure on the part of Magistrate Judge Nachmanoff to overrule the ALJ's decision on substantial evidence review.

With respect to the first issue, Wood cites to the Fourth Circuit case of *Mascio v. Colvin* for the proposition that the ALJ was bound to make a specific factual finding on Wood's ability to "stay on task." *Mascio* did hold that "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d at 638. In doing so, *Mascio* reversed a district court's approval of an ALJ's RFC that "said nothing about [a claimant's] ability to perform [certain work] for a *full* workday." *Id.* (emphasis added).

However, the Fourth Circuit recently clarified *Mascio*'s holding in *Shinaberry v. Saul*. *Shinaberry* observes that *Mascio* "[does] not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." 952 F.3d at 121. Rather, so long as the RFC directly addresses some form of medical evidence that speaks to the ability of a claimant to "stay on task," it can satisfy the Social Security Act's requirements. *See Shinaberry*, 952 F.3d at 121–22. In *Shinaberry*, the Court upheld the ALJ's RFC.

The facts and RFC at issue in *Shinaberry* are nearly identical to those in this case. In *Shinaberry*, the RFC revealed that the ALJ performed a function-by-function analysis to find that the claimant should be limited to "simple, routine, repetitive tasks." *Id.* at 122. The ALJ's RFC analysis in *Shinaberry* referenced medical assessments of state agency consultants that attested to the plaintiff's adequate "concentration and task persistence," and found that plaintiff had "moderate limitations in concentration, persistence, [and] pace." *Id.* at 122 & n.3.

In this case, the RFC also shows that the ALJ performed a function-by-function analysis and determined that Wood is functionally limited to the performance of "simple, routine, and

6

repetitive tasks." A.R. 20. Like in *Shinaberry*, the ALJ weighed the mental opinion evidence proffered by state agency psychological consultants, Drs. David Deaver and Jo McClain. A.R. 24–25. This opinion evidence was corroborated by other medical evidence showing that the claimant suffers from a "moderate limitation with regard to concentrating, persisting, or maintaining pace." A.R. 25; *see also id.* ("[T]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."); *id* at 16 (noting that, as a general matter, the RFC contemplates an individual's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."). These similarities indicate that the ALJ's RFC in this case passes "substantial evidence" muster under *Shinaberry*, insofar as it addresses Wood's ability to "sustain concentration, persistence, or pace."[1] *See* 952 F.3d at 122.

To the extent that Wood's first objection attempts to relitigate the RFC's omission of "favorable facts,"[2] she falls short. The ALJ's discussion of medical evidence and "mental

---

[1] The Court also credits the Commissioner's peripheral argument that Wood overstates "the effect of a 'moderate' rating in concentrating, persisting, or maintaining pace" based on recent updates to the SSA regulations. *See* Dkt. 28, at 5 (citing 20 C.F.R. pt. 404, Subpt. P, App'x 1, § 12.00(F), which states that the "effects of [a claimant's] mental disorder" are evaluated according to a rating scale that defines a "moderate limitation" as one that entails functioning that is "fair" "on a sustained basis").

[2] These include Wood's (1) ability to maintain attendance and punctuality, Dkt. 27, at 3, and (2) Wood's ability to interact with supervisors, *id.* at 3–4. The ALJ addresses a number of facts going to these issues. She solicited from Wood responses to the questions "are there days that you plan to leave the house but are unable?" and "can you give us a rough idea of how often that will happen[?]" *See, e.g.*, A.R. 72–73. The ALJ also makes clear in the RFC that this evidence was factored. *See* A.R. 25 ("[T]he undersigned added limitations based on recent medical evidence of record as well as the claimant's hearing testimony."). Moreover, the ALJ addresses facts going to Wood's ability to interact with supervisors. *Compare* A.R. 20 (finding that Plaintiff can "occasionally interact with coworkers"), *with* A.R. 78 (Vocational Expert testifying before the ALJ and observing that jobs that accommodate Wood's functional limitations and abilities would involve "occasional contact with supervisors" where "a supervisor expects to tell

7

opinion evidence" in the RFC is extensive. *See* A.R. 21–27. The ALJ also makes clear that she "considered all symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." A.R. 20 (citing SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)). The "substantial evidence" review standard governing this case requires only that we find "more than a mere scintilla [of] relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Shinaberry*, 952 F.3d at 120 (citing *Biestek*, 139 S. Ct. at 1151–52). That standard is satisfied here, notwithstanding the breadth of the ALJ's statement.

Finally, the Magistrate Judge committed no reversible error by refusing to overturn the ALJ's decision simply because the ALJ was silent as to one state medical consultant's "characterization" or "diagnosis" of Wood as "poorly controlled anxiety well documented." Dkt. 27, at 2 (citing A.R. 109). That is because disability determinations under the SSA regulations center on functional impairments *resulting* from medical conditions—not medical conditions standing alone. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229–30 (4th Cir. 2011) ("However, medical conditions alone do not entitle a claimant to disability benefits; there must be a showing of related functional loss.") (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)).

Because the RFC and Administrative Record make clear that the ALJ did, in fact, consider all the relevant evidence, Wood's objections should be overruled. To the extent that Wood wants us to second-guess the ALJ's balancing of favorable and unfavorable evidence, this request is foreclosed by our standard of review.

---

[an employee] what to do when [the employee arrives] and then [the employee proceeds to] go do their own job and not be there." In other words, substantive evidence supports the ALJ's finding in her RFC that Wood can work jobs that require initial interaction with her supervisor.

8

### Objection 2. The R&R failed to find that the ALJ improperly relied on Plaintiff's Activities of Daily Living ("ADLs") and did not properly factor her demeanor at the hearing

Wood's second objection is also without merit. The SSA regulations directly contemplate that an ALJ may factor a claimant's activities of daily living (ADLs) in rendering a disability determination. *See* 20 C.F.R. § 404.1529(c)(3)(i) ("[W]e will carefully consider any other information you may submit about your symptoms [including] [y]our daily activities"). In Wood's RFC, the ALJ recognizes that "the daily activities that the claimant . . . perform[s] are inconsistent with her complaints of prolonged and consistent disability functional limitations." A.R. 26. While some of the daily activities to which the ALJ cites are concededly sedentary, others are inconsistent with Wood's alleged mental impairments, which Wood argues limit her ability to complete tasks and enter the public. *See* A.R. 26–27 (observing that Wood had, at times during her alleged disabling period, raised three dogs, walked the mall, grocery shopped at Giant, served as a chauffeuse for her daughter, and started a business); *see also* A.R. 33 (Wood admitting that she had gone out to lunch with a friend during the alleged disabling period). All this record evidence supports the ALJ's findings, and is more than enough to overrule Wood's objection to the Magistrate Judge's R&R.

As for the weighing of Wood's "demeanor" at the hearing, Plaintiff seeks to impose on the ALJ an obligation to describe all physical observations throughout the course of the hearing. Dkt. 27, at 5 ("Since . . . behavior is, by definition, non-verbal, it is not on the record until placed there. Due Process demands that the ALJ place her observations on the record during the hearing rather than baldly asserting or implying the same for the first time in the written decision. For example, the ALJ was free at the conclusion of the hearing to affirmatively state,

9

'Counsel, for the record I did not note any signs of anxiety or aberrant behavior by Ms. Wood during the hearing.'"). This would foist on the ALJ the significant burden of narrating the physical environment throughout the proceeding. This proposed duty is not a legal requirement.

Wood also complains that her statements and actions at the hearing were inconsistent with the ALJ's ultimate ruling. Dkt. 27, at 5–6. Plaintiff wishes for her remarks at the hearing to be given dispositive weight in the ALJ's ultimate disability determination. But just because Wood "appeared uncomfortable," Dkt. 27, at 6, and stated that she was "trying not to have a panic attack," *id.*, does not mean that Wood is entitled to a favorable disability adjudication. *See Beckner v. Astrue*, 2011 WL 5979786, at *5 (W.D. Va. Nov. 29, 2011) (approving of the ALJ's accordance of only slight weight to a claimant's statements about her condition during the adjudicatory hearing). Nor must the ALJ address these specific facts in her ruling. The ALJ weighed all the evidence based on the totality of the record, *Hall v. Colvin*, 2015 WL 9303045 (E.D. Va. Nov. 20, 2015), and incorporated her credibility determination as to Wood's testimony and demeanor at the proceeding. The record shows that Wood was lucid and well-conversant throughout the hearing. *See generally* A.R. 40–74. These facts, even viewed in conjunction with Wood's stray remarks, do not contradict the ALJ's ultimate findings. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)) ("The hearing officer concluded that 'to the extent that [claimant's] testimony would indicate that his pain is so severe and intractable as to prevent him from engaging in any substantial gainful activity, the Administrative Law Judge finds it not to be credible.' Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, [his] observations concerning these questions are to be given great weight."). The Magistrate Judge was correct in its refusal to overturn the ALJ's decision on this basis.

**Objection 3. The R&R should have found that the ALJ improperly weighed evidence going to the improvement of Wood's Mental Disorder**

Again, under "substantial evidence" review, claimant's third objection is without merit. The ALJ's RFC analysis expressly states that "the medical evidence of record reveals responsiveness to conservative treatment and medications, with improvement." A.R. 26. This finding is supported by abundant record evidence showing Wood's ongoing improvement in response to treatment. *See* R&R, at 17, *see also* Dkt. 28, at 13–14. Because a lengthy record supports the ALJ's findings on this issue, Wood's objections to the R&R must be overruled.

Nor does Wood's last argument on this point, based on select language in SSR 16-03p, carry the day. *See id.* (citing 2017 WL 5180304, at *9) ("Persistent attempts to obtain relief of symptoms . . . *may* be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.") (emphasis added). This language does not connect symptoms with impairments, *see Astrue*, 459 F. App'x at 229–30, nor does it evince a mandate on the ALJ. And even if it did, the ALJ was entitled to resolve conflicting evidence on this issue based on its independent judgment.

## IV. CONCLUSION

Having reviewed the Report and Recommendation of the Magistrate Judge entered herein on June 8, 2020 (Dkt. 26), the Plaintiff's objections to the Report and Recommendation of the Magistrate Judge (Dkt. 27), and the Defendant's Response to Plaintiff's objections to the Report and Recommendation (Dkt. 28), and having considered the record and the Report and Recommendation (Dkt. 26) and finding no error, it is hereby **ORDERED** that:

(1) The Plaintiff's objections to the Report and Recommendation of the Magistrate Judge (Dkt. 26) are **OVERRULED**;

11

(2) The Report and Recommendation of the Magistrate Judge (Dkt. 26) is **ADOPTED** in accordance with the reasoning stated above;

(3) Plaintiff's motion for summary judgment (Dkt. 12) is **DENIED**;

(4) Defendant's cross-motion for summary judgment (Dkt. 18) is **GRANTED**;

(5) The Commissioner's decision is **AFFIRMED**.

Judgment will issue by separate order.

It is **SO ORDERED.**

September 15, 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge